IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHAWN VENEZIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-430 |
| | ) | |
| 12th & DIVISION PROPERTIES, LLC; | ) | Judge Thomas A. Wiseman, Jr. |
| CJUF II TERRAZZO LLC; and | ) | |
| BANK OF AMERICA, N.A.,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the Court is a Motion to Dismiss the Amended Complaint filed by 12th & Division Properties, LLC and CJUF II Terrazzo LLC (collectively, "Defendants") seeking dismissal of all claims set forth in plaintiff Shawn Venezia's Amended Complaint for failure to state a claim upon which relief can be granted. The motion has been fully briefed and is ripe for resolution.

**I.    STANDARD OF REVIEW**

When ruling on a defendant's motion to dismiss, a federal district court is required to "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Regardless of the outlandishness or lack of independent support for a complaint's factual assertions, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). The courts, however, are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, a complaint that consists merely of "naked assertion[s]" lacking "some further factual enhancement" can be dismissed at the pleading stage. *Twombly*, 550 U.S. at 557.

---

[1] Pursuant to the parties' request, an Agreed Order has been entered dismissing without prejudice all claims against former defendant Bank of America, N.A. (Doc. No. 9.)

More specifically, under the new standards established by the Supreme Court, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" in order to withstand a motion to dismiss under Rule 12(b)(6).  *Twombly*, 550 U.S. at 570.  *Twombly*'s more rigorous "plausibility" standard supplants the earlier standard established by *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Under *Twombly*, it is clear that dismissal of "a wholly conclusory statement of claim" is appropriate where the complaint does no more than "[leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Twombly*, 550 U.S. at 561 (second alteration in original) (quoting *Conley*, 355 U.S. at 45).

Although there was some doubt, in the wake of *Twombly*, as to whether the new standard applied outside the anti-trust context, that doubt was resolved by the more recent case of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  There, the Court applied the *Twombly* standard in the employment-discrimination context, finding that the plaintiff had not stated a "plausible" claim of discrimination, and further clarifying that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  The Court also reconfirmed that "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a . . . claim" are too "conclusory and not entitled to be assumed true."  *Id.* at 1951 (quoting *Twombly*, 550 U.S. at 555; other citations omitted).

It is with these principles in mind that the Court turns to the merits of Defendants' motion.

## II.     FACTUAL BACKGROUND

The factual allegations in the Amended Complaint are identical for all practical purposes to those in the original complaint.  According to those allegations, Plaintiff Shawn Venezia executed a contract ("Purchase Agreement" or "Agreement") on or around May 17, 2006, for the purchase of a condominium unit within the Terrazzo Project for the sum of $493,000.  The "effective date" of the Agreement—the date by which it was executed by all parties—is June 12, 2006.  Venezia submitted a deposit in the sum of $49,300.  In September 2006, the Purchase Agreement was amended to provide for Venezia's purchase of $3,597.50 worth of "upgrades" under paragraph 5.2 of the Agreement, and for his purchase of the

exclusive right to use two residential parking spaces for an additional $25,000. Venezia submitted the total cost of the upgrades to the Escrow Agent for the Project as an additional deposit. The parties agreed he would pay for the parking spaces at closing.

The condominium unit that is the subject of Venezia's Purchase Agreement is now completed and ready for occupancy. Venezia, however, filed suit on May 13, 2009, seeking generally to rescind the Purchase Agreement and obtain a refund of his deposits, or, alternatively, compensatory damages equal to the amount of his deposits, plus prejudgment interest and attorneys' fees. In support of his contention that he is entitled to cancel or rescind the Agreement, Plaintiff alleges that the Terrazzo Project is a subdivision that falls within the purview of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 – 1720 (the "Land Act"), and its implementing regulations found at 24 C.F.R. Parts 1710 through 1730 (the "Regulations"), and that his purchase of a unit within the development constituted the purchase of a lot within a subdivision, as defined by the Act, that did not fall within any valid statutory exemption. Venezia further maintains that Defendants did not comply with certain disclosure requirements set forth in the Land Act.

More specifically, Venezia asserts that:

(1) Defendants knowingly and intentionally failed to register the Project with the United States Department of Housing and Urban Development ("HUD");

(2) Defendants failed to provide him, as the potential purchaser of a non-exempt lot within the Project, with a written Property Report meeting the requirements of 15 U.S.C. § 1707 prior to his execution of the Purchase Agreement, as required by 15 U.S.C. § 1703(a)(1)(B);

(3) Defendants failed to provide him notice in the Purchase Agreement or by any other means, of his right to rescind the Agreement within seven days of execution thereof, as required by 15 U.S.C. § 1703(b);

(4) Defendants failed to provide him notice in the Purchase Agreement, or by any other means, of his right to rescind the Purchase Agreement within two years of execution thereof in the event the Defendants did not comply with their statutory obligation to provide him a Property Report;

(5) The Purchase Agreement contains untrue statements of material fact and misleading statements in violation of § 1703(a)(2)(B) of the Land Act; and

(6) The Agreement did not contain a stipulation regarding the completion of recreational amenities at the Project as required by § 1703(a)(2)(D) of the Land Act.

Based primarily upon these allegations, Venezia asserts four "Counts" in his Amended Complaint. Defendants have now filed the present motion seeking dismissal of all claims asserted in the Amended Complaint.

III.    **ANALYSIS AND DISCUSSION**

    A.    **Background:  The Land Act**

This Court's research reveals a surprising dearth of case law construing the Land Act, particularly from the Sixth Circuit.  Generally speaking, however, courts appear to agree, based on its legislative history, that "[t]he underlying purpose of the [Land Act] is to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property."  *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978); *see also Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1449 (11th Cir. 1985) (noting the statute requires that the buyer receive information necessary to make his decision prior to entering into a purchase agreement); *United States v. Steed*, 674 F.2d 284, 287 (4th Cir. 1982) (the Land Act "is a comprehensive statute requiring subdivision developers, unless exempt, to furnish prospective purchasers pertinent information about lots offered for sale").  In light of its remedial objectives, the Land Act "must be applied liberally in favor of broad coverage," with exemptions being construed "narrowly, in order to further the statute's purpose of consumer protection."  *Pigott v. Sanibel Dev., LLC*, 576 F. Supp. 2d 1258, 1267 (S.D. Ala. 2008) (citations omitted).

The section of the Act entitled "Civil liabilities" empowers purchasers and lessees protected by the Act to bring suit "at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title."  15 U.S.C. § 1709(a).  Section 1703(a) requires registration of developments and the furnishing of a Property Report to any purchaser or lessee in advance of signing a purchase or lease agreement.  In the event a purchaser or lessee brings suit for violation of § 1703(a), courts are authorized to "order damages, specific performance, or such other relief as the court deems fair, just, and equitable."  15 U.S.C. § 1709(a).  A separate subsection further authorizes purchasers and lessees to "bring an action at law or in equity against the seller or lessor (or successor thereof) to enforce

any right under subsection (b), (c), (d), or (e) of section 1703 of this title." *Id.* § 1709(b). Section 1703(b) provides that any non-exempt purchase agreement may be revoked at the purchaser's option until midnight of the seventh day after signing the contract, "and such contract or agreement shall clearly provide this right." Subsection 1703(c) provides for revocation of the contract within two years from the date of signing, at the purchaser's option, if the seller fails to give the purchaser a Property Report prior to execution of the contract, "and such contract or agreement shall clearly provide this right." Subsection (d) provides a rescission remedy for certain nondisclosures not alleged here, and subsection (e) states that if a purchase agreement is revoked under any other portion of § 1703, the purchaser is entitled to recover all money paid by him to the seller under the revoked agreement.[2]

**B.      Count I**

In Count I of his original complaint (Doc. No. 1), Venezia sought to rescind the Purchase Agreement and to recovery all monies he had deposited with the Escrow Agent, plus prejudgment interest, based upon the fact that Defendants had failed to provide him with a Property Report or to provide him the requisite notice of the seven-day or two-year rescission periods created by the Land Act. Venezia did not allege that he had suffered actual damages as a result of the Defendants' purported violations of the Act. In an Order entered July 30, 2009, the Court granted Defendants' motion to dismiss in part Count I of the original complaint, holding that Venezia's claim for rescission based on Defendants' failure to provide him a copy of the Property Report was barred by the plaintiff's failure to give notice of his intent to rescind the Purchase Agreement within the two-year period prescribed by the statute. In the Memorandum Opinion explaining the rationale for the Court's holding, the undersigned noted, in dicta, that "[t]he fact that the statutory remedy of rescission under § 1703(c) is no longer available does not necessarily mean that the courts would be unable to award rescission as an equitable remedy if a claimant can show that he or she was actually harmed by the statutory violations or even by the

---

[2] The Act also provides for investigation and enforcement of its provisions by the Secretary of Housing and Urban Development, who may bring a civil action against developers in federal court, or by the Attorney General, who may bring criminal proceedings. 15 U.S.C. § 1714. The Secretary is authorized to impose a civil monetary penalty for any violation of the Act, *see* 15 U.S.C. § 1707a, and, in a criminal action, any person found to have willfully violated any provision of the Act or its implementing regulations, or who willfully makes an untrue statement of fact in any property report, or omits to state any material fact required to be stated therein, may be fined up to $10,000, imprisoned for not more than five years, or both. 15 U.S.C. § 1717.

developer's failure to provide the requisite notice."  (7/30/2009 Mem. Op, Doc. No. 17, at 9 (citing 15 U.S.C. § 1709(a) ("A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title.  In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable.")).)   In other words, as the plaintiff has framed it, he must state a "legally recognized basis for equitable relief or monetary damages."  (Pl.'s Brief, Doc. No. 26, at 13.)

Venezia has now amended his complaint to include a bare statement in Count I that he "has been damaged" by the Defendants' various failures to comply with the statute.  (Am. Compl., Doc. No. 23, ¶ 62.)  However, the fact section of the Amended Complaint, like that of the original, contain no allegations indicating how or whether Defendants' purported violations of the Act actually affected Venezia in any way.   Based on that omission, Defendants have filed their present motion asserting that Count I, as amended, is subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as construed and applied by the Supreme Court in *Twombly* and *Iqbal*, insofar as the plaintiff's averment of "damage" is a conclusion rather than a factual assertion, and one which this Court need not accept as true.   The issues presented by the Defendants' motion to dismiss Count I of the Amended Complaint are (1) whether the Amended Complaint states a claim for damages based on the Defendants' failure to provide notice of an unconditional right to rescind the Purchase Agreement within seven days of execution thereof; (2) whether the Amended Complaint states a claim for damages or equitable relief based upon Defendants' failure to provide a copy of the Property Report to Venezia at or prior to the time of executing the Purchase Agreement; and (3) whether the Amended Complaint states a claim for damages or equitable relief based on the failure to provide notice of the right to rescind the Purchase Agreement within two years if the seller failed to provide a copy of the Property Report to the purchaser.

### 1.    *Purported Lack of Notice of the Statutory Seven-Day Rescission Right*

Venezia alleges that his Purchase Agreement did not provide notice of his unconditional seven-day right of rescission as mandated by the Act, that he was not at any material time notified of that right by Defendants, that this omission constituted a violation of § 1703(a)(1) of the Land Act,[3] and that he was

---

[3]  The Court notes that the omission in fact does not constitute a violation of § 1703(a)(1).   The requirement that notice of this right be provided, and the right itself, are created instead by § 1703(b).

damaged by this violation. In response, in addition to pointing out that Venezia has not included any factual allegations showing how he was damaged, Defendants argue that the Purchase Agreement provided an even more generous period during which Venezia had the option to cancel the Agreement for any reason or no reason, but he opted not to do so and cannot as a matter of fact or law state a claim based on the supposed lack of notice in the Purchase Agreement.

As an initial matter, the Court notes that, ordinarily, in ruling on a Rule 12(b)(6) motion, matters outside the pleadings may not be considered unless the motion to dismiss is converted into one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 10(c), however, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," such that it may be considered without converting the motion into one for summary judgment. A corollary to that principle is that, when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); C.J.S. *Pleading* § 530 ("Generally, in case of a variance between the allegations of a pleading and the terms of an instrument annexed or attached thereto as an exhibit, the exhibit will control, as far as its legal effect is concerned, unless it is expressly impeached or explained by the facts stated in the pleading." (footnotes omitted)).

In the present case, Venezia attached a copy of the Purchase Agreement as an exhibit to the complaint; that document is therefore part of the pleading for all purposes, and the Court may consider it in ruling on the Defendants' motion to dismiss. The Purchase Agreement itself contains a clause that defeats Venezia's claim based on his allegation that he did not have notice of a seven-day rescission right. The operative clause states as follows:

> RESCISSION RIGHT. THE BUYER SHALL BE ENTITLED TO CANCEL THIS AGREEMENT BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIVE (5) BUSINESS DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND BUYER'S RECEIPT OF THE CONDOMINIUM DOCUMENTS, AS DEFINED IN ARTICLE 8.

(Purchase Agreement ¶ 36 (capitalization in original).) First, as a matter of ordinary usage and common sense, five business days is equivalent to the period of seven calendar days set forth in § 1703(b); thus, the Court finds as a matter of law and contract interpretation that there is no functional difference between

the seven-day period provided by statute and the period of five business days provided by contract. Venezia could not reasonably claim not to have notice of the rescission right contained in his Purchase Agreement.

Second, as Defendants point out, the period of five business days provided in the Agreement did not begin to run until the Condominium Documents were provided to Venezia. The Purchase Agreement itself incorporates by reference the Condominium Documents, and indicates that these Documents would be provided to Venezia at some indeterminate point after execution of the Purchase Agreement. (*See* Purchase Agreement at 1 ("**DEVELOPER WILL FURNISH** [Condominium Documents] **TO BUYER**." (emphasis in original).) In other words, the terms of the Purchase Agreement provided either the same period or a longer period of time within which Venezia had the opportunity and ability to cancel the Agreement without cause, which again obviates his cause of action based on the failure of the Purchase Agreement to include language that precisely mirrored the language set forth in the statute. *Cf. Werdmuller Von Elgg v. Carlyle Developers, Inc.*, No. 09-cv-132-Orl-31KRS, 2009 WL 961144, at *2 (M.D. Fla. April 7, 2009) (holding that the plaintiffs failed to state a claim for violation of 15 U.S.C. § 1703(b) where their purchase contract gave notice that they had a right to cancel the agreement by giving notice to the seller until midnight of the fifteenth day following the signing of the contract).[4]

Venezia's response does not even address Defendants' arguments regarding this issue and it appears he may have conceded that he does not have a viable cause of action based on the statutory seven-day right to cancel the Purchase Agreement. The motion to dismiss any claim in Count I based on the alleged failure to provide notice of that right will therefore be granted, with prejudice. Further, to the extent Count II of the Amended Complaint (discussed in Part III.C., below) is based upon the same alleged failure to give notice of the seven-day rescission right, that portion of Count II is subject to dismissal on the same grounds.

---

[4] Defendants have attached to their motion a copy of the cover letter that purportedly accompanied the Condominium Documents delivered to Venezia, and the FedEx tracking update Defendants claim show the Condominium Documents were provided to Venezia November 1, 2006, some five months after execution of the Purchase Agreement. The cover letter and tracking update, however, are not self-authenticating and do not, standing alone, establish the date on which the Condominium Documents were delivered to Venezia. Even if they did, these documents were not referred to in the plaintiff's complaint and it is debatable whether they could be deemed central to his claims, such that the Court could consider them without converting the Defendants' motion into one for summary judgment. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997). The Court's ruling is therefore not predicated on that submission.

###### 2.      *Failure to Provide Property Report*

For purposes of reviewing Defendants' motion to dismiss, the Court accepts as true Venezia's allegations that the Project is a development covered by the Land Act's requirements, and that Defendants failed to furnish him with a Property Report meeting the requirements of § 1707 prior to his execution of the Purchase Agreement.  That failure is a "prohibited activity" under § 1703(a)(1) as a consequence of which this Court is authorized to "order damages, specific performance, or such other relief as the court deems fair, just, and equitable."  15 U.S.C. § 1709(a).  Venezia does not actually seek specific performance; although he claims to have suffered "damages," the only remedy he seeks is equitable relief in the form of rescission of the Purchase Agreement and recovery of his deposits.[5]

Defendants argue that this Court has already ruled that equitable rescission is no longer an available remedy unless Venezia is able to show he has actually suffered some harm that is causally related to the Defendants' failure to comply with the Land Act.  Defendants further contend that Venezia's conclusory assertion that he "has been damaged" by their purported failure to comply with the statute amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949, or "'naked assertion[]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550 U.S. at 557), of the type the Supreme Court has deemed insufficient to state a claim for relief that is plausible on its face.  (Defs.' Mem., Doc. No. 25, at 7.)  In response, Venezia argues that the Land Act is modeled after the Securities Act of 1933 and that, consequently, the statute renders the Purchase Agreement at issue here "illegal as a matter of law" and therefore "voidable at the option of the innocent party."  (Pl.'s Mem., Doc. No. 26, at 11 (citing cases construing the Securities Act of 1933).)  In other words, Venezia contends that the Land Act is essentially a strict-liability statute pursuant to which he can prevail on Count I by showing technical violations thereof without regard to whether he was actually harmed by those violations.

Outside the context of a civil enforcement action brought by the Secretary of Housing and Urban Development or criminal actions brought by the Attorney General,[6] however, Venezia has pointed to no

---

[5] As previously indicated, Venezia's only purported "damages" consist of the deposits he has already paid to Defendants in connection with the Purchase Agreement for the condominium unit.

[6] *See* Note 2, *supra.*

authority that supports his assertion that the Land Act establishes strict *civil* liability for any technical violation thereof, and this Court's own research reveals none. Moreover, under a plain reading of the statute, the plaintiff would need to provide some grounds that would substantiate the conclusion that rescission, a harsh remedy, would be just, fair and equitable under the circumstances. Venezia has not included any factual allegations in his Amended Complaint that would remotely justify rescission. For instance, he has not alleged that the condominium unit as completed does not conform with the condominium as promised, nor does he allege that the actual Condominium Documents Defendants provided him omit any of the information that would or should have been included in a formal Property Report. He does not seek specific performance to remedy a particular defect in the finished condominium unit, and he has not otherwise identified any actual damages he might have suffered as a result of the Defendants' failure to provide him with the Property Report as required by § 1703(a). Instead, Venezia merely avers, in an entirely conclusory manner, that he has been damaged "[a]s a direct and proximate result of the violations of § 1703(a)(1) of the Land Act . . . and is therefore entitled to rescind the [Purchase Agreement]." (Am. Compl. ¶ 62.)

The Court has already ruled that Venezia is time-barred from rescinding the Purchase Agreement under 15 U.S.C. § 1703(c). Moreover, as currently framed, Venezia's bare and conclusory assertion of "damages" in the Amended Complaint amounts to nothing more than a "formulaic recitation" of an element of the claim and as such is "not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (citing *Twombly*, 550 U.S. at 554–55). The only "damages" alleged are in the form of the deposits paid, plus interest and legal fees. To the extent the payment of deposits can be deemed "damages," Venezia has not shown how such damages are in any way related to the Defendants' failure to give him a copy of the Property Report. Consequently, the Amended Complaint does not state a plausible cause of action based on that failure. The motion to dismiss that claim will therefore be granted, but without prejudice.

### 3. Failure to Provide Notice of Statutory Two-Year Rescission Right

The crux of Count I is Venezia's claim for equitable relief—in the form of rescission—based upon the Defendants' failure to give him notice of his right to revoke the Purchase Agreement within two years of its execution in the event the Defendants failed to comply with the statutory requirement that they provide him with a copy of the Property Report.

As an initial matter, the Court notes that the Act itself is unclear as to whether any cause of action for *damages* based on that failure is authorized. Venezia maintains that failure to give notice constitutes a violation of 15 U.S.C. § 1703(a). The right in question, however, is created by § 1703(c) and is not referenced or cross-referenced in § 1703(a). Unlike § 1709(a), which explicitly authorizes suit for damages or equitable relief to remedy violations of § 1703(a), § 1709(b) does not expressly authorize suit for damages as a result of a violation of § 1703(c). Instead, that section provides that a purchaser may bring suit to "enforce" any rights under § 1703(c) (among others) within three years of execution of the Purchase Agreement. 15 U.S.C. § 1709(b). Where the relief sought is rescission, and notice of the desire to rescind is given within the two-year period stated in § 1703(c), an enforcement action would obviously take the form of a suit seeking to rescind a purchase agreement. Where rescission is no longer a viable option and the only other right provided by § 1703(c) is the right to notice of the now invalid rescission right, it is not entirely clear to this Court what it means to "enforce" that right retroactively.

At least one other court has concluded, however, that an enforcement action encompasses a claim for damages arising from the failure to provide the required notice of the right to cancel a purchase agreement, even where the actual ability to revoke is barred. In *Murray v. Holiday Isle, LLC*, 620 F. Supp. 2d 1302 (S.D. Ala. 2009), the district court had previously dismissed the plaintiffs' rescission claims based on the plaintiffs' failure to give notice of intent to rescind within two years of signing their purchase agreements. *Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269 (S.D. Ala. 2008). The matter came before the court again on the defendant's motion for summary judgment as to the plaintiffs' claim for damages based on the defendant's failure to provide them notice of the right to rescind created by § 1703(c). The court denied the motion on the basis that the plaintiffs had established the existence of a disputed issue of material fact as to whether the plaintiffs had suffered damages that were causally related to the defendant's failure to provide notice of the revocation right:

> As the Court reads it, § 1703(c) consists of two distinct parts, a rescission element and a notice element. First, that section creates a two-year option for a purchaser to rescind a purchase agreement for a lot as to which the developer failed to provide a required property report. Nothing in the statutory language purports to confine or limit this rescission option to only those cases in which the purchaser has incurred actual damages by dint of the seller's failure to furnish a property report; to the contrary, that option is couched as an absolute, unfettered right on the part of the purchaser. Second, § 1703(c) requires the purchase agreement clearly to delineate the buyer's rescission rights. The statutory language does not circumscribe this disclosure obligation to cases in which the purchaser was harmed by the seller's failure to provide a property report.

> Rather, the crux of the provision is the seller's obligation in all non-exempt transactions to notify a purchaser in writing of his or her right to rescind. *Where a purchaser has been damaged by nondisclosure of these rescission rights as required by § 1703(c), the purchaser plainly has an actionable ILSFDA claim pursuant to § 1709(b).*

*Murray*, 620 F. Supp. 2d at 1312 (emphasis added).

Although this Court is not persuaded that § 1709(b) "plainly" creates an actionable claim for damages based on the failure to disclose, to read the statute as not creating a cause of action for the failure to notify would create something of an absurdity. Moreover, as previously noted, the Land Act is a remedial statute which "must be applied liberally in favor of broad coverage." *Pigott v. Sanibel Dev., LLC*, 576 F. Supp. 2d 1258, 1267 (S.D. Ala. 2008) (citations omitted). The Court will therefore construe § 1709(b) as creating a cause of action for damages, which must be brought within three years of the date of the Purchase Agreement, based upon a developer's failure to provide notice of a right to cancel a purchase agreement within two years if the developer does not furnish the plaintiff with a Property Report when so required.

The next question then is whether Venezia has actually stated a claim under § 1709(b). By the time the court considered the defendant's motion in *Murray v. Holiday Isle*, discovery had been completed. In denying the motion, the court noted that the record was replete with evidence, in the form of testimony from the plaintiffs, that if they had been made aware of the two-year rescission right within two years of signing their purchase agreements, they would have exercised that right. In other words, the plaintiffs had succeeded in creating an issue of fact as to whether they had been damaged by the defendant's failure to disclose the rescission right. In Venezia's case, however, he has alleged "damage" as a result of the lack of notice but he has not indicated how he was damaged or how the Defendants' purported statutory violations are causally related to such damage. Specifically, Venezia has not alleged that, but for the lack of notice of the right to do so, he would have exercised his right to revoke the Purchase Agreement within two years of its execution.

Again, the Court considers this omission in light of the standards established in *Iqbal* and *Twombly*, set out above: To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 570. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*,

550 U.S. at 557).  The allegations of "damage" here, an element essential to the plaintiff's ability to prevail

in his claim, are precisely the type of "formulaic recitation" and "naked assertions devoid of further factual

enhancement" that no longer suffice to state a claim.  The allegations in the Amended Complaint do not

establish a "legally recognized basis for equitable relief or monetary damages."  (Pl.'s Brief, Doc. No. 26,

at 13.)

        The motion to dismiss this claim will therefore be granted, but again without prejudice.

        **C.      Count II**

        In Count II of his Amended Complaint, Venezia first asserts that the Purchase Agreement

contains several material statements of untrue fact, in violation of the anti-fraud provisions of the Land

Act, and that these material misstatements induced him to execute the Purchase Agreement.  He claims

that "[a]s a direct and proximate result of the violations of § 1703(a)(2)(B)" he "has been damaged" and is

therefore entitled to compensatory damages equal to the sum of his deposits with the Escrow Agent plus

prejudgment interest.[7]  The specific statements of allegedly untrue fact at issue are (1) that the estimated

completion date of the Project was December 2007; and (2) that Venezia could not "cancel, amend or

diminish" his obligations under the contract "so long as [his] Unit is completed on or before three (3) years

from the Effective Date of this Agreement.[8]  In addition, Venezia alleges that the Purchase Agreement

omitted a contractual stipulation, required by § 1703(a)(2)(D), "to provide and complete the recreational

amenities at the Project."  (Am. Compl. ¶ 69.)  Defendants now seek dismissal of the cause of action

based on these factual allegations.  Each will be addressed in turn.

        ***1.      The "Estimated" Completion Date***

        It is unlawful for any developer who is selling or leasing a lot covered by the Land Act—

        to obtain money or property by means of any untrue statement of a material fact, or any
        omission to state a material fact necessary in order to make the statements made (in light
        of the circumstances in which they were made and within the context of the overall offer
        and sale or lease) not misleading, with respect to any information pertinent to the lot or

---

[7]  In other words, again, Venezia effectively seeks equitable rescission as a result of these alleged
violations of the Land Act.

[8]  Venezia also includes, under Count II, a claim that the statement in the Purchase Agreement that he
had only "five (5) business days" after his execution of the Purchase Agreement to cancel the Agreement
without cause was misleading because it did not disclose the more advantageous rescission right
provided by the Land Act.  The Court has already concluded that the statement in question is not
misleading.

subdivision. . . .

15 U.S.C. § 1703(a)(2)(B).  Venezia alleges that Defendants violated this provision by "estimating" the completion date for his condominium unit to be December 2007 (*see* Purchase Agreement at 1 ("Estimated Closing Date for the Residential Unit:  December, 2007"), approximately eighteen months after execution of the Agreement.  Venezia specifically alleges that this estimation "constitutes an untrue statement of material fact" because his unit "could not have been completed until nearly fifteen (15) months after that date."  (Am. Compl. ¶ 66.)  He further alleges that if he had been correctly informed that the Project and his unit could not been completed until nearly fifteen months after the estimated completion date, he would not have executed the Purchase Agreement.  Notably, Venezia does not actually state that Defendants knew or should have known at the time of making the estimation that it would be impossible to complete the Project or Venezia's unit by that date, nor does he allege that Defendants, at the time of contracting, never actually intended to complete or to try to complete the Project by the estimated completion date.

In their motion to dismiss, Defendants argue that any claim based upon the estimated completion date fails as a matter of contract construction because:  (1) as a threshold matter, the Amended Complaint fails to allege that Defendants made any untrue statement at the time of contracting; (2) the "estimated closing date" pertains to a future event and therefore cannot qualify as a misrepresentation of existing fact; and (3) the Agreement, read as a whole, clearly explains that the estimated closing date is an estimation only, that the Defendants could not guarantee completion by that date, and that Venezia as purchaser had no recourse or claim for compensation based on a failure to complete construction by that date so long as his unit was completed on or before three years from the effective date of the Agreement.

The Court agrees that the Amended Complaint fails to state a viable claim for fraud or misrepresentation based on the estimated completion date.  Ordinarily, for a statement to be actionable as fraud, it must pertain to an "existing or past fact" and not to future events.  *Edwards v. Travelers Ins. of Hartford*, 563 F.2d 105, 110 (6th Cir. 1977); *Cargile v. Della Coal Servs.*, No. 85-5306, 1986 WL 16500, at *2 n.3 (6th Cir. Feb. 14, 1986) ("Conjecture as to future events is not actionable in fraud."); *Brown v. Brown*, 863 S.W.2d 432, 434 (Tenn. Ct. App. 1993) ("Mere expressions of opinion do not give rise to an action of fraud.").  However, fraud may be predicated on promises of future behavior so long as those

promises "are made with a present intention not to perform them, or on promises made without any intention to perform them." *Nahigian v. Juno Loudoun, LLC*, No. 1:09cv725 (JCC), 2010 WL 318397 (E.D. Va. Jan. 19, 2010) (applying principle in context of Land Act fraud claim) (quoting *Patrick v. Summers*, 235 Va. 452, 454 (Va. 1988)). In any event, fraud in federal cases generally must be pleaded with particularity, Fed. R. Civ. P. 9(b), and nothing in the Land Act would appear to override that requirement.

Here, although the Amended Complaint alleges that the Project "could not" have been completed by the estimated completion date, it does not contain an allegation that the estimation was untrue at the time it was made, that Defendants were aware that it was untrue at the time it was made, or that Defendants never intended to attempt to complete the Project by the estimated completion date. Moreover, the mere fact that the Project and Venezia's unit ultimately were not completed by the estimated date does not, standing alone, give rise to an inference that the estimation was untrue at the time it was made or that it was made in bad faith. *Cf. Sanders v. First Nat'l Bank*, 114 B.R. 507, 516–17 (M.D. Tenn. 1990) ("[A]s a matter of law the alleged promisor's failure to keep the promise [does] not support the inference that the promisor did not intend to honor the promise at the time it was made.").

The language of the contract considered as a whole further supports the conclusion that the estimate was simply an estimation. and that Defendants were not in any way guaranteeing completion by that date:

> Completion Date. Seller anticipates that the Unit will be completed by the estimated closing date set forth on Page 1, but Buyer understands that Seller cannot guarantee completion by that date. Seller is not obligated to make, provide or compensate Buyer for any accommodations or costs as a result of any delays. Any delay in the delivery of the Unit by Seller will not allow Buyer to cancel, amend or diminish any of Buyer's obligations so long as such Unit is completed on or before three (3) years from the Effective Date of this Agreement, except that such date may be extended by acts recognized as constituting justification for legal impossibility under the laws of the State of Tennessee or an act of God.

(Purchase Agreement ¶ 5.3.) The quoted provision expressly alerted Venezia that he could anticipate delays and notified him that he would have no recourse in the event of any delay unless his unit was not completed by the third anniversary of the effective date of the Purchase Agreement.

In sum, Venezia has not pleaded fraud with the specificity required by the Federal Rules of Civil Procedure. Further, the Amended Complaint does not allege facts that reasonably give rise to an

inference that the estimated closing date contained in the Purchase Agreement constitutes an "untrue statement of a material fact," or that the Purchase Agreement "omi[tted] . . . a material fact necessary in order to make the statements made [*i.e.*, the estimated closing date] (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading." 15 U.S.C. § 1703(a)(2)(B). The motion to dismiss the fraud claim predicated on the estimated closing date will therefore be granted, and the claim dismissed without prejudice.

### 2. The Effect of Paragraph 5.3 of the Purchase Agreement

Venezia next asserts that the Purchase Agreement's notice that he could not "cancel, amend or diminish" his obligations so long as his Unit was completed within three years of the effective date of the Purchase Agreement is misleading, and therefore in violation of 15 U.S.C. § 1703(a)(2)(B), because it did not disclose the existence of more advantageous rescission rights under the Land Act. (Am. Compl. ¶ 67.) This claim fails based on the unambiguous terms of paragraph 5.3 itself. The referenced statement, read in context, clearly indicates that delay beyond the estimated closing date *in and of itself* would not give the purchaser the right to "cancel, amend or diminish any of [his] obligations," so long as Venezia's unit was completed within three years. As a matter of contract interpretation, there is nothing misleading or remotely ambiguous about that statement, as it does not purport to encompass any other situations that might give rise to other rights on the part of the purchaser, including, for instance, the right to cancel the Agreement within five business days of receipt of the Condominium Documents, or the right to cancel if the Purchaser is unable to obtain conditional loan approval or loan commitment within ten days of the effective date of the Agreement, both of which are contemplated by the Agreement. As a matter of hornbook contract law, the contract will be construed, to the extent possible, to give effect to all contract provisions. *See Diversified Energy, Inc. v. Tenn. Valley Auth.*, 223 F.3d 328, 339 (6th Cir. 2000) ("Under settled principles of construction, this contract must be read as a whole so as to give meaning and effect to all of its provisions." (quoting *Malone & Hyde, Inc. v. United States*, 568 F.2d 474, 476 (6th Cir. 1978)).

The paragraph 5.3 of the Purchase Agreement is not misleading, and the claim premised on the allegedly misleading nature of that paragraph will therefore be dismissed with prejudice.

### 3. The Omission of a Contractual Stipulation to Provide and Complete Recreational Amenities

The Land Act makes it "unlawful" for a developer "to represent that . . . recreational amenities will

be provided or completed by the developer without stipulating in the contract of sale . . . that such services or amenities will be provided or completed."   15 U.S.C. § 1703(a)(2)(D).   The Amended Complaint purports to assert a claim for damages based on the omission from the Purchase Agreement of any such stipulation.

The Court notes, first, that the Purchase Agreement itself incorporates by reference the Condominium Documents and requires the Seller "to construct the Unit substantially in compliance with the plans and specifications which are available for inspection by Buyer in Seller's office."  (Purchase Agreement ¶ 5.1.)  That statement effectively constitutes a stipulation that the Project would comport with the plans that were laid out in the Condominium Documents and made available to Venezia.  Venezia has not indicated that the Project as completed does not substantially comply with those plans.

Even more critically, the plaintiff has not identified any services or amenities Defendants represented, pre-contract, that the Project would include, whether they were identified in the Condominium Documents or not.  Likewise, he has not identified which of those promised services or amenities, if any, were not actually provided in the completed development.  As a result, he has not shown that he was damaged as a result of the purported omission of the required stipulation (or by any material misrepresentation regarding the services and amenities the Project would include).  Based upon the principles articulated in *Twombly* and *Iqbal*, discussed above, the Court finds that Venezia has failed to state a plausible claim for damages based upon the Defendants' purported failure to comply with § 1703(a)(2)(D).  This claim will likewise be dismissed without prejudice.

### D.    Count III

Count III of the Amended Complaint purports to state a claim for breach of contract, under Tennessee state law, based upon Defendants' refusal to refund Venezia's deposits after Venezia notified them, in or around April 2009, that his conditional loan approval had been withdrawn by his lender and that he was disapproved for the loan as a result of the fact that the unit had appraised at a value approximately $62,000 below the purchase price established by the Purchase Agreement.

The provision upon which Venezia's breach-of-contract claim is premised states in relevant part as follows:

> Buyer's obligations under this Agreement are subject to the following financing contingency.  Within five (5) business days from the Effective Date of this Agreement

> Buyer shall apply to at least one experienced lender approved by Seller ("Preferred Lender") for a conditional loan approval or loan commitment. Buyer may also elect to apply to a lender other than a Preferred Lender for a conditional loan approval or loan commitment. Buyer agrees to pay the Total Purchase Price in cash unless Buyer gives Seller written notice of Buyer's inability to obtain a conditional loan approval or loan commitment within ten (10) business days after the Effective Date of this Agreement. If Buyer gives Seller timely notice, then Seller shall cause Buyer's Deposit to be refunded to Buyer, in which event, this Agreement shall be canceled. . . .

(Purchase Agreement ¶ 4.) In other words, under the Agreement, Venezia had an obligation to apply for conditional loan approval or loan commitment within five days of June 12, 2006, the effective date of the Agreement. If he was unable to obtain such approval or commitment, he had ten days from June 12, 2006 within which to notify Defendants of such inability and to cancel the contract on that basis.

Here, Venezia does not allege that he was unable to obtain conditional loan approval—to the contrary, he clearly alleges that he obtained conditional loan approval shortly after executing the contract. He alleges instead that three years later the lender revoked its approval, presumably based upon some condition that was anticipated by the original *conditional* loan approval. Nothing in paragraph 4 of the Agreement supports Venezia's assertion that the lender's revocation of its conditional loan approval provides a basis for canceling the contract at this late date. In fact, as Defendants point out, another provision of the Agreement unambiguously provides that

> **EXCEPT AS SET FORTH IN ARTICLE 4, THIS AGREEMENT IS NOT CONDITIONED UPON THE BUYER SECURING FINANCING.** Buyer agrees that Buyer will be obligated to pay all cash at Closing under this Agreement and that Buyer's obligations under this Agreement to purchase the Unit will not depend on obtaining a mortgage from any lender or any conditions imposed by such lender. Buyer will be solely responsible for making Buyer's own financial arrangements.

(Purchase Agreement ¶ 3 (boldface and capitalization in original).)

In short, the allegations in the Amended Complaint do not plausibly or even remotely state a claim for breach of paragraph 4 of the Purchase Agreement. Defendants' motion to dismiss Count III will be granted, with prejudice.

### E. Count IV

Paragraph 13.1 of the Purchase Agreement provides that, in the event the purchaser, *i.e.*, Venezia, defaults on his obligation under the Agreement to close the transaction, then the seller shall be entitled to retain all deposits already submitted by Venezia, including accrued interest and any amounts already paid by him for changes, extras and upgrades. That provision further specifies that no other

remedy is available to the seller in the event of the buyer's default. In Count IV of the Amended Complaint, Venezia contends that "[t]he forfeiture of Mr. Venezia's deposits under the provisions of paragraph 13.1 . . . constitutes an unlawful 'penalty.'" (Am. Compl. ¶ 79.)

The plaintiff does not appear to seek a judicial declaration to that effect, however. Rather, Venezia simply insists that because the clause constitutes an unenforceable penalty, he is entitled to recover the referenced deposits. Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include, among other things, a demand for the relief sought. No matter how broadly and generously this Court construes Count IV of the Amended Complaint, the Court cannot read into it a non-existent request for declaratory relief.

Further, Count IV does not seek affirmative relief of any kind based on any action (or failure to act) by Defendants. Instead, Venezia seems to be asserting that the mere presence of Paragraph 13.1 in the Purchase Agreement entitles him to rescind the Agreement and recover his deposits. Such a claim is unavailing because, even assuming the clause is unenforceable, its inclusion in the contract would not void the entire contract. (*See* Purchase Agreement ¶ 15 ("If any provision of this Agreement is held invalid or unenforceable to any extent, the validity or enforceability of the remainder of this Agreement shall not be affected, provided the deletion of such provision does not adversely affect the receipt of any material benefit by or in favor of any party hereunder or substantially increase the burden of any party hereto.").) In addition, if the clause is enforceable, the liquidated damages provision set forth in paragraph 13.1 still would have no effect whatsoever unless Venezia is deemed to be in material breach of the Purchase Agreement.

Consequently, the Court can only construe Count IV as an anticipatory defense to the Defendants' counterclaim for breach of contract,[9] although Venezia did not raise this defense in answering the Defendants' counterclaim. Despite the substantial quantity of ink the parties have devoted to the issue of whether the clause in question is a permissible liquidated damages clause or an unenforceable penalty under Tennessee law, the Court finds that the claim must be dismissed simply for

---

[9] The Court notes that, in light of the economic recession, Defendants are likely correct that their actual damages, even if not easily determinable, would exceed the damages provided by contract, which begs the question of why Venezia would seek to set aside the liquidated damages clause in the first place, and why Defendants would oppose such a move.

failure to state a claim at all. Venezia will have the opportunity to amend his complaint, should he so desire, to seek a declaration as to the enforceability of the provision in question or, alternatively, to plead it as a defense to the Defendants' counterclaim for breach of contract.

In that event, the Court hereby signals its disinclination to entertain a motion to dismiss such a claim or defense, on the basis that resolution of the question will require consideration not only of "the intention of the parties based upon the language in the contract," but also of "the circumstances that existed at the time of contract formation." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 100 (Tenn. 1999) (footnote omitted). Those circumstances include (1) "whether the liquidated sum was a reasonable estimate of potential damages," and (2) "whether actual damages were indeterminable or difficult to measure at the time the parties entered into the contract." *Id.* at 100–01 (citing *V.L. Nicholson*, 595 S.W.2d at 484). These issues appear to require some development of the factual record for resolution; this Court's research does not reveal any reported cases applying *Guiliano* in which a claim (or defense) regarding the enforceability of a liquidated damages provision has been decided in the context of a motion to dismiss on the pleadings, nor have the parties pointed to any such case.

In short, the motion to dismiss Count IV will be granted, but the claim will be dismissed without prejudice.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss will be granted in its entirety, with some claims dismissed with prejudice and others without prejudice. The matter as a whole will not be dismissed however; Venezia will be granted fourteen days within which to file a second amended complaint to address the problems identified herein. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge