**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHAWN VENEZIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:09-cv-430** |
| | ) | |
| **12th & DIVISION PROPERTIES, LLC; CJUF II TERRAZZO LLC; and BANK OF AMERICA, N.A.,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendants.** | ) | |

***consolidated with***

| | |
|---|---|
| **JEFFREY D. KULA and KARIN L. KULA,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **12th & DIVISION PROPERTIES, LLC; CJUF II TERRAZZO LLC; and BANK OF AMERICA, N.A.,** | ) |
| | ) |
| **Defendants.** | ) |

***consolidated with***

| | |
|---|---|
| **TARA McKNIGHT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **12th & DIVISION PROPERTIES, LLC; CJUF II TERRAZZO LLC; and BANK OF AMERICA, N.A.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

Before the Court is the Motion to Dismiss (Doc. No. 36) filed by Defendants 12th & Division Properties, LLC and CJUF II Terrazzo LLC, seeking dismissal of certain claims set forth in the Second Amended Complaint filed in *Venezia*, the First Amended Complaint in *Kula*, and the Complaint in *McKnight* (collectively, the "Amended Complaints"). The three referenced cases have been consolidated for all purposes. Based on alleged violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C.

§§ 1701–1720 ("ILSFDA" or "Land Act"), the Plaintiffs all seek to rescind Purchase Agreements they executed with Defendants for the purchase of condominium units at a multi-use, multi-unit, high-rise condominium project known as the "Terrazzo" ("Terrazzo" or the "Project"), located in Nashville, Tennessee, developed by Defendants. For the reasons set forth herein, the motion will be granted in part and denied in part.

**I. PROCEDURAL BACKGROUND**

These cases already have a long and somewhat tortured history. On July 30, 2009, this Court entered an order granting Defendants' first motion to dismiss in *Venezia*, which was aimed solely at Mr. Venezia's claim for rescission based upon the Defendants' failure to comply with the requirement under the ILSDA that they provide him with a written Property Report before he entered into his Purchase Agreement for a condominium unit at the Terrazzo. In January 2010, after the *Kula* case was reassigned to the undersigned, the Court granted an identical motion aimed at an identical claim stated in the virtually identical complaint in that case.

Meanwhile, Venezia filed his First Amended Complaint in October 2009, which was the target of Defendants' second motion to dismiss, this time seeking dismissal of the amended complaint in its entirety. The Court granted that motion on February 9, 2010 but dismissed most of the plaintiff's claims without prejudice to his ability to amend his complaint again to address the deficiencies in the pleading. The *Venezia* matter was not dismissed in its entirety because Defendants had filed a counterclaim for breach of contract, which remained pending. Venezia thereafter filed a Second Amended Complaint, which is the subject of the current motion to dismiss. Meanwhile, because that order was issued before Defendants got around to filing a second motion to dismiss or even an answer in *Kula*, the *Kula* plaintiffs promptly filed their First Amended Complaint, which is virtually identical to Venezia's Second Amended Complaint.

The trajectory of *McKnight* is somewhat different. The same plaintiff filed her original action, Case No. 3:09-cv-953, on October 9, 2009, a day after Venezia filed his First Amended Complaint. Defendants filed a motion to dismiss that matter in its entirety around the same time they filed the parallel motion in *Venezia*, but they did not file an answer and counterclaim. In March 2010, a month after the Order entered in *Venezia*, the Court entered an Order granting the *McKnight* motion, dismissing some of

the claims with prejudice and others without. Because no counterclaim pending and the plaintiff did not seek to amend her complaint, the matter was dismissed outright. McKnight filed a new action on March 23, 2010. Her complaint is identical for all practical purposes to Venezia's Second Amended Complaint and the Kulas' First Amended Complaint. The three actions were consolidated pursuant to a motion filed by the Plaintiffs.

Defendants have now filed yet another Motion to Dismiss some of the claims set forth in the latest round of Amended Complaints in the consolidated cases. Specifically, Defendants assert that: (1) Plaintiffs' "registration claims" are subject to dismissal because Plaintiffs have not alleged any harm stemming from the alleged failure to file a "statement of record" with the Department of Housing and Urban Development ("HUD"); (2) Plaintiffs' claims regarding Defendants' alleged failure to disclose the identity of the "developer" of the condominium project must be dismissed because the Purchase Agreements clearly disclosed the identity of the "developer"; (3) Plaintiffs cannot state a claim based upon alleged noise-related nuisances because Plaintiffs expressly waived any claims related to such issues by executing their Purchase Agreements, which disclosed the possibility of noise; and (4) fraud claims based upon the estimated project completion dates are not pleaded with the requisite particularity and must therefore be dismissed.[1]

## II. DISCUSSION AND ANALYSIS

In addressing this motion to dismiss, the Court will not reiterate the factual background set forth in its prior rulings, except to note that the Court accepts as true, for purposes of reviewing the motion, Plaintiffs' allegations that the Project is a development covered by the Land Act's requirements. Further, the Court remains cognizant of the standard of review set forth in its prior Memorandum addressing the motion to dismiss the *Venezia* complaint: To survive a motion to dismiss, a complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Under this standard, dismissal of a "wholly conclusory statement of claim" is appropriate where

[1] Defendants also purport to seek the dismissal of Plaintiffs' claims related to the provision of recreational amenities on the basis that "Plaintiffs did not even try to cure the defects previously identified by the Court." (Mot. Dismiss, Doc. No. 36, at 2.) In response, Plaintiffs point out that they are well aware that "a dismissal 'without prejudice' but with a deadline for amendment prevents further litigation absent a reversal on appeal if the claim was not thereafter 'amended.' Thus, there is no need to again 'dismiss' a previously 'dismissed' claim such as that related to 'recreational amenities.'" (Resp. Mot. Dismiss, Doc. No. 40, at 2 n.1.) That claim remains dismissed, pursuant to prior rulings of the Court.

the complaint does no more than "[leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 561 (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

**A. Plaintiffs' "Registration" Claims**

Section 1704 of the ILSDA provides for the registration of subdivisions by filing a "statement of record" with HUD, meeting "the requirements of this chapter and such rules and regulations as may be prescribed by the Secretary." 15 U.S.C. § 1704(a).[2] Section 1706 defines when the registration of a statement of record is "effective," and § 1703 makes it "unlawful for any developer or agent . . . to sell or lease any [non-exempt] lot unless a statement of record with respect to such lot is in effect in accordance with section 1706." 15 U.S.C. § 1703(a)(1)(A).

In the Amended Complaints, Plaintiffs state a new claim based upon Defendants' failure to register the Project with HUD by filing a statement of record as required by 15 U.S.C. § 1703(a)(1)(A). Specifically, they assert that the Purchase Agreements are not merely voidable but void *ab initio* for illegality based on the failure to register:

> At all times material to this litigation, the Project was required by Congressional mandate to be registered with HUD . . . . It was not. Thus, from the outset the Venezia Contract could not have been performed by either party without violating . . . the Land Act. Stated more simply, from the outset the Venezia Contract was an unlawful transaction prohibited by federal law. Consequently, the Venezia Contract is, and has always been, "void" under federal law. . . . As a consequence, it can not and should not be enforced in any federal or state court. And it can and must be rescinded by this Court's exercise of its equitable powers.

(Venezia 2d Am. Compl. ¶ 58.[3])

Defendants assert that this claim must be dismissed because Plaintiffs have not alleged any damages or harm stemming from the failure to register, and that the Court already rejected a "substantively identical argument" when it concluded that Plaintiffs could not state a claim for rescission, outside the two-year time frame for revocation set forth in 15 U.S.C. § 1703(c), based solely upon

[2] Section 1705 identifies the information that must be included in the statement of record and the supporting documentation that must be provided with it, generally including the same information included in the property report plus "Additional Information and Documentation" as the Secretary may require. *See also* 24 C.F.R. § 1710.100(a) (specifying the information to be provided, the format in which it must be submitted, and the necessary supporting documentation).

[3] Because the Amended Complaints are, as previously indicated, identical for all practical purposes, the Court will cite herein to the Second Amended Complaint in *Venezia*.

Defendants' failure to provide them with a printed property report as required by 15 U.S.C. § 1703(a)(1)(B).

The issue presented here is whether Plaintiffs are entitled to rescind their Purchase Agreements solely on the basis of Defendants' failure to file a statement of record with HUD, irrespective of whether Defendants actually failed to disclose to Plaintiffs any material information they were statutorily required to disclose, or whether Plaintiffs suffered any damages resulting from Defendants' failure to file the statement of record. Based upon a plain reading of the statute as a whole, the Court concludes that the Purchase Agreements are not void *ab initio* or illegal as a result of the failure to register.

The Land Act itself provides that "[a] purchaser . . . may bring an action in law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title." 15 U.S.C. § 1709(a). Further, "[i]In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just and equitable." *Id.* In awarding relief for violations of § 1703(a), the court may such factors as "the contract price of the lot . . . ; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased," as well as any other factors that appear relevant. *Id.* This provision strongly suggests that violations of § 1703(a) do not render a contract void and unenforceable *by either party*, as Plaintiffs are arguing.

Moreover, section 1703 itself provides for rescission of a sales agreement at the option of the purchaser within two years of his signing the agreement if the developer failed to provide the purchaser with a copy of the property report as required by § 1703(a)(1)(B) or to give notice of such revocation right in the purchase agreement itself. 15 U.S.C. § 1703(c). In other words, failure to provide a property report renders a purchase agreement *voidable* at the option of the seller. Obviously, if an agreement is merely voidable, it is not void *ab initio*, illegal, and unenforceable. Because the language employed in subsections 1703(a)(1)(A) and (B) making it "unlawful" both to fail to register a statement of record and to fail to give the purchaser a property report is identical, the Court must conclude that Congress did not intend for the failure to register to render a purchase agreement void and illegal any more than the failure to provide a property report would. Indeed, to conclude otherwise could mean that perfectly fair and

equitable contracts to which all parties believe themselves bound, and which involved no fraud or failure to disclose material information, would be void and illegal merely for the developer's failure to comply strictly with the registration requirement. Such an interpretation of the statute could ultimately work to the detriment of purchasers as well as sellers of lots covered by the Land Act. The Court therefore concludes that any claim for rescission of the Purchase Agreements based on a contention that the Agreements are void and illegal as a result of Defendants' failure to register a statement of record with HUD fails as a matter of law and is subject to dismissal.

To the extent Plaintiffs also seek rescission on the grounds that their Purchase Agreements are *voidable* as a result of Defendants' failure to register, the Court further finds that nothing in the statute supports that remedy either. As indicated above, section 1703(c) provides for rescission within two years of executing a purchase agreement at the purchaser's option based upon a developer's failure to give the purchaser a property report. Despite the parallel prohibition on selling lots for which a statement of record is not in effect and for which the purchaser has not been given the property report, there is no parallel provision permitting rescission in the event the developer fails to register the project with HUD. Further, although rescission is an equitable remedy that arguably falls within the scope of relief this Court is authorized to award under § 1709(a), the remedy is only available to the extent the Court deems it "fair, just and equitable." *Id.* Fairness would seem to require that the Plaintiffs allege damages arising from the failure to register. Consequently, to the extent Plaintiffs are asserting a claim for revocation of the contracts based *solely* upon the Defendants' failure to register the Project with HUD as required by the Land Act, that claim fails, and the Defendants' motion to dismiss that claim will be granted.

To the extent Plaintiffs are asserting damages arising from the failure to register the statement of record, an entirely different issue is presented. It is debatable whether the damages Plaintiffs claim can be traced to the failure to file a statement of record, but that issue has not been briefed by the parties and is not properly the topic of a motion to dismiss.[4]

[4] The Court notes that the disclosures Plaintiffs allege should have been included in a statement of record are also required to be included in a property report. Moreover, the statute does not require a developer to make a statement of record available to purchasers of units within a development, only that the statement be filed with HUD. It strains credibility to believe any prospective purchaser of a condominium unit would bother to obtain a copy of the statement of record from HUD, rather than relying on the more readily accessible and available property report instead.

**B. Claims Related to the Disclosure of the Identify of the "Developer"**

Under 15 U.S.C. § 1703(a)(1)(D), it is unlawful for a developer "to display or deliver to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report." The property report, among other things, must include the correct name, address and telephone number of "each person having an interest in the lots in the subdivision." 15 U.S.C. § 1705(1) (defining information to be contained in the statement of record); *see* 15 U.S.C. § 1707(a) (generally requiring the property report to incorporate the same information contained in the statement of record). *See also* 24 C.F.R. §§ 1710.100, 1710.112 (requiring both the statement of record and property report to state the developer's name, address, and telephone number), and 1710.112(d) (stating, "[t]he following statement shall appear" in the property report: "A copy of our financial statements for the period ending ---------------- is available from us upon request..").[5]

Plaintiffs claim that Defendants violated § 1703(a)(1)(D) because, although Defendants did not provide them a property report, if they had, it would have identified (consistently with the Purchase Agreements) Defendants as the developers, but all the press releases and promotional materials provided to the public at large and to Plaintiffs prior to their execution of their respective Purchase Agreements identified Crosland, LLC as the sole developer of the Project. Plaintiffs allege that Defendants' purpose in representing Crosland as the developer of the Project was to "create the illusion that the Project was backed by the financial strength and resources of Crosland when, in fact, the true owner and developer of the Project was a single asset company with no operating history or financial resources, a situation painfully demonstrated by the fact that CJUF Terrazzo was financially unable to carry the Project for even six (6) months after its completion." (Venezia 2d Am. Compl. ¶ 62.) Plaintiffs further allege that if they had known "the true facts about the identity and financial resources of the owner and developer of the project, [they] would not have purchased a unit at the Project." (*Id.*)

Defendants argue in their present motion that any claim based upon the failure to disclose the identity of the "developer" of the Project must be dismissed because the terms of the Purchase

[5] Defendants contest Plaintiffs' assertion that the regulations require disclosure of the developer's financial information by pointing out that 24 C.F.R. § 1710.112(a) provides that by subjections (b) and (c) apply only apply if a precondition not met here applies. Subsection (d), however, applies to all developers.

Agreement "trump any inconsistent allegations in the complaints," and the Purchase Agreements identify Defendants (actually 12th & Division) as the developer. Defendants further argue that Plaintiffs' reliance on the supposedly inconsistent statements in the promotional materials is prohibited by the plain language of their contracts, and further argue that Plaintiffs "have not and cannot allege that they were damaged" by Defendants' failure to give notice that their financial statements would be made available upon request.

The Court finds that Plaintiffs have stated a claim for violation of 15 U.S.C. § 1703(a)(1)(D): They allege that the promotional materials were materially inconsistent with "information required to be disclosed in the property report" insofar as the promotional materials identified Crosland as the developer, while Defendants were the actual developers (or, in the alternative, that the disclosures made to Plaintiffs should have disclosed Crosland *and* Defendants as the developers). Plaintiffs allege that they were harmed by this inconsistency because they relied to their detriment on the promotional materials. For purposes of the motion to dismiss, in light of the presumption that the factual allegations are true and that Defendants are subject to the Land Act, Defendants' contention that the terms of the Purchase Agreements trump the language of the promotional materials is simply beside the point. The motion to dismiss this claim will be denied.

**C. Claims Related to the Disclosure and Waiver of Claims Related to "Nuisances"**

Pursuant to 24 C.F.R. § 1710.115(f), the printed property report required by § 1703(a)(1)(B) must disclose any and all "land uses" that may adversely affect the Project and must describe such "nuisances." The regulation specifies that the type of nuisances covered includes "unusual or unpleasant noises or . . . nuisances such as existing or proposed industrial activity, military installations, airports, railroads, truck terminals, race tracks, animal pens, noxious smoke, chemical fumes, stagnant ponds, marshes, slaughterhouses and sewage treatment facilities." *Id.*

Plaintiffs further allege that all current Project unit owners' use and enjoyment of the Project is adversely affected by "unusual or unpleasant noises" caused by the railroads and interstate highways in close proximity to the Project, which effect is magnified by the use of non-sound-insulated glass on all exterior walls of the Project. Plaintiffs assert that "[n]either the existence of these 'nuisances' nor the intended use of non-sound insulated glass was disclosed" to Plaintiffs by Defendants, and that if this

information had been disclosed, they would not have entered into agreements to purchase units at the Project. (Venezia 2d Am. Compl. ¶ 64.) Plaintiffs further allege they did not learn such information from other sources at any time material to this litigation. (Venezia 2d Am. Compl. ¶ 63.)

Defendants seek to dismiss any claim based upon a failure to disclose the noise from the nearby interstate and railroads on the basis that the claim is not plausible, and more specifically that the Terrazzo Project is located in the middle of downtown Nashville, such that a property report disclosing the proximity of highway and railroads would not have disclosed anything new to Plaintiffs. Defendants also argue that dismissal of this claim is warranted based upon the clear and explicit language of the Purchase Agreements, which all include the following disclosures and disclaimers regarding the possibility of noise and odors:

> 34. MIXED USE PROJECT DISCLOSURE. THE TERRAZZO BUILDING MAY ALSO INCLUDE OTHER USES SUCH AS OFFICE, RETAIL, COMMERCIAL, RETAURANT, BAR AND GENERAL PUBLIC FACILITIES. OWNING PROPERTY IN AN ACTIVE MIXED USE URBAN COMMUNITY HAS . . . DISADVANTAGES. THE DISADVANTAGES INCLUDE, BUT ARE NOT LIMITED TO, . . . NOISE (INCLUDING THE SOUNDS OF ENTERTAINMENT, RETAILS STORES, RESTAURANTS AND BARS, AND GARAGE OPERATIONS), ODORS, VIBRATIONS, INTERRUPTIONS, LOSS OF PRIVACY, TRAFFIC CONGESTION . . . DURING BOTH DAY AND EVENING HOURS. . . .
>
> 35. NOISE DISCLOSURE. THE BUYER HEREBY ACKNOWLEDGES AND AGREES THAT SOUND AND IMPACT NOISE TRANSMISSION IN A BUILDING SUCH AS THE TERRAZZO BUILDING IS VERY DIFFICULT TO CONTROL, AND THAT NOISES FROM ADJOINING OR NEARBY UNITS, MECHANICAL EQUIPMENT AND/OR NON-RESIDENTIAL USES CAN AND WILL BE HEARD IN UNITS. THE SELLER DOES NOT MAKE ANY REPRESENTATION OR WARRANTY AS TO THE LEVEL OF SOUND OR IMPACT NOISE TRANSMISSION BETWEEN AND AMONG UNITS AND THE OTHER PORTIONS OF THE CONDOMINIUM PROPERTY. THE BUYER HEREBY WAIVES AND EXPRESSLY RELEASES . . . ANY SUCH WARRANTY OR CLAIM FOR LOSS OR DAMAGES RESULTING FROM SOUND OR IMPACT NOISE TRANSMISSION.

(Purchase Agreement ¶¶ 34, 35.)

In response, Plaintiffs argue only that the disclosures of some types of noise was not sufficient to put them specifically on notice about the specific noise caused by railroads and an interstate highway in close proximity to the Project.

The Court finds that Plaintiffs' allegations, insofar as they relate to a failure to disclose the decision to use "non-sound insulated glass," are insufficient to state a claim that is plausible on its face. The use of non-sound-insulated glass is simply not the type of "nuisance" required to be disclosed under

24 C.F.R. 1710.115.

Notwithstanding, the Court finds that Plaintiffs have, just barely, stated a claim based upon the failure to disclose the proximity of the railroad and the interstate to the Project, and their allegation that they would not have chosen to purchase units at the Project if the proximity of the railroad and interstate had been disclosed. In reaching that conclusion, the Court notes that "railroads" are actually listed as a nuisance that must be disclosed, but that it is not clear whether the regulations require the disclosure of the proximity of "interstate highways." They are not listed in the regulation among the examples of "nuisances," and that omission is fairly glaring in light of the inclusion of "airports, railroads, truck terminals, [and] race tracks," among other things. Further, interstate highways are a ubiquitous and ordinary fact of American existence, and the interstate's proximity to the Project would have been readily obvious if Plaintiffs looked at a map to ascertain the location of the Project. The parties have not briefed the issue of whether interstates qualify as a "nuisance" for purposes of the ILSFDA, however, so the Court will presume for purposes of the motion to dismiss that it is one.

Further, although the Court is highly skeptical of Plaintiffs' allegations that they would not have entered into the Purchase Agreements if the proximity of the interstate and railroad had been disclosed, particularly in light of Plaintiffs' knowledge that the Project was a multi-use development to be located in downtown Nashville, and in light of the disclosure of the possibility of other types of noise. Notwithstanding, it is not the Court's job at this point to weigh the evidence. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). Thus, while Plaintiffs' nuisance-related claim is *improbable*, the Court cannot say that it is *implausible* under *Twombly*. The motion to dismiss the claim based upon failure to disclose the proximity of the railroad and interstate highway as potential "nuisances" will therefore be denied.

**D. Claims Related to Estimated Completion Dates**

In Count II of the Amended Complaints, Plaintiffs assert that Defendants violated 15 U.S.C. §

1703(a)(2)(B) when estimating the closing dates with respect to each plaintiff's condominium.[6] The referenced provision of the ILSDA prohibits developers from "obtain[ing] money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision." *Id.*

Defendants assert that the claim asserted in Count II of the Amended Complaints based upon the estimated closing date set forth in the Purchase Agreements must be dismissed because: (1) Plaintiffs have not pleaded fraud based upon the estimated completion date with the specificity required by Fed. R. Civ. P. 9(b) because they have not alleged particular facts that show the Defendants knew the estimated completion date was untrue at the time it was made; (2) the estimated completion date stated in the Purchase Agreement was "simply an estimation," and the Agreement itself alerted Plaintiffs that they could anticipate delays and notified them that they would have no recourse based on such delay unless their units were not completed by the third anniversary of the effective dates of their contracts; and (3) in providing an estimated completion date, Defendants did not make any promise of future action upon which a fraud claim could be based.

Contrary to Defendants' assertions, Plaintiffs state particular facts which, if true, would permit a reasonable jury to conclude that Defendants knew at the time the Purchase Agreement was executed that it would not be possible to close by the estimated closing dates, and that Defendants intentionally failed to disclose facts which, if the Plaintiffs had been aware of them, would have led the Plaintiffs to conclude that the estimated closing date stated in each of their contracts was completely unrealistic. Specifically, Plaintiffs allege that the Defendants knew but failed to disclose to Plaintiffs that: (1) the size and configuration of the Project had not been finalized yet; (2) the marketing plan for the Project had not yet been finalized; (3) the construction drawings for the Project had not yet been finalized; (4) the general contractor for the Project had not yet been selected and no construction contract had been negotiated; (5)

[6] Shawn Venezia and the Kulas executed their respective Purchase Agreements in May 2006, and the estimated closing dates set forth in the Agreements was December 2007, or roughly eighteen months after the signing. McKnight executed her Agreement in March 2007, and her estimated closing date was "Summer 2008."

the construction financing for the Project had not been finalized; (6) one condition of the proposed construction financing was that at least forty residential units at the Project be pre-sold prior to the commencement of construction; (7) the marketing plan being considered for the Project was designed to limit the availability of the most desirable units so that they could be sold at higher prices at the end of the sales process; and (8) one actually commenced, the Project would take no less than eighteen months to build. (Venezia 2d Am. Compl. ¶ 71.) Plaintiffs specifically allege that if they had been made aware of these facts, which were in Defendants' possession, they would have known that it was not possible for their units to be completed by the estimated completion dates, and would have chosen not to execute the Purchase Agreements.

In other words, Plaintiffs allege that Defendants failed to disclose material facts which were "necessary in order to make the statements made [*i.e.*, the estimated closing dates] (in light of the circumstances in which they were made and within the context of the overall offer and sale) not misleading." 15 U.S.C. § 1703(a)(2)(B). It is clear to the Court that the facts alleged in the Amended Complaints state a claim for violation of that provision. The fact that the Purchase Agreements couched the closing dates as estimations and not promises that the contracts would close by those dates, and that the contracts further purported to foreclose any possibility of recourse by the Plaintiffs in the event of delays, cannot shield Defendants from liability if they actually knew or should have known at the time of contracting that it was impossible—or even highly unlikely—that the purchases would close by the estimated dates. The motion to dismiss the claims set forth in Count II of the Amended Complaints based upon the misleading nature of the estimated closing dates will be denied.

## III. CONCLUSION

For the reasons set forth herein, the Defendants' motion will be granted in part and denied in part. Specifically, the motion to dismiss Plaintiffs' "registration" claims will be granted and those claims dismissed with prejudice. Plaintiffs have also failed to state a claim based upon the failure to disclose the developers' decision to use "non-sound-insulated glass" on the Project. In all other respects, Defendants motion will be denied. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge